Wallace's Estate.

Argued May 1, 1934. Before SIMPSON, KEPHART, MAXEY, DREW and LINN, JJ.

*John B. Hannum, Jr.,* of *Hannum, Hunter, Hannum & Hodge, Donald H. Hamilton, Eugene P. Balderston, Jr.,* and *Kingsley Montgomery,* for appellants.

*Ira Jewell Williams, Lloyd Goman, John E. McDonough, E. A. Howell* and *Ira Jewell Williams, Jr.,* for appellees.

OPINION BY MR. JUSTICE KEPHART, June 30, 1934:

John A. Wallace died in 1915; by his will his estate was divided equally among his four children; his only son, Frank, whom he designated an executor, was given an option to purchase his interest in the *Chester Times,* a newspaper published in Chester. Six months after his father's death, Frank exercised the option and purchased that interest, representing 550 shares of stock, his mother, his three sisters and the coexecutor joining in the conveyance. Under the agreement of sale, all dividends issued on the stock were distributed to the estate until the purchase price was paid in full. Subsequently, Frank bought part of the stock of a retiring shareholder. Frank died in January, 1927, without issue, leaving his entire estate to his wife who died in-

testate three days later. At Frank's death, he held 745 shares of the stock in the company operating the newspaper, and several months later his sisters, the present appellants, instituted an action in the federal court for the eastern district of Pennsylvania against his estate and that of his wife, asking for a reconveyance of their share of the stock which Frank had purchased from his father's estate in 1915. The bill was drawn upon the theory that Frank took the stock as trustee, either expressly or constructively, for himself and his three sisters. The district court dismissed the bill (Kitts v. Hanna, 29 F. (2d) 1010), and, on appeal to the Circuit Court of Appeals, the decree was affirmed per curiam: Id., page 1013. Later, the surviving executor of John A. Wallace filed an account. To this account the present appellants filed exceptions, seeking to surcharge the executors because the price at which Frank bought the stock was inadequate, and that, therefore, he held it as constructive trustee for the estate. These exceptions were dismissed by the Orphans' Court of Delaware County, the action of which was affirmed by this court: Wallace's Est., 299 Pa. 333.

The sisters of Frank Wallace are here making their third effort—begun nearly two and one-half years after the failure of the second—to secure a division of the shares of stock standing in their brother's name. The proceeding took the form of a petition for a citation on the administrators of Frank's estate to file an account, and to enjoin a transfer of the securities involved. An oral trust was averred. The orphans' court dismissed the petition for the reasons: first, it did not sufficiently aver a trust; second, the claim is barred by laches; and, third, the claim has been adjudicated in the prior proceedings.

Appellants' petition does not disclose, with the precision the law requires, sufficient averments of fact to establish a parol trust in personal property. It must

be remembered that when Frank Wallace, the alleged donor, died, he had not only title but possession of the trust res. These he had continually kept. To impose a trust on personal property the law requires explicit and direct averments which show conclusively that a trust had been created. More particularly should this be true under circumstances like the present. The law is most exacting in this respect; otherwise a trust could easily be fraudulently imposed on the property of decedents' estates. It is, therefore, required that the averments showing the existence of a trust be clear and specific. In Bair v. Snyder County State Bank, 314 Pa. 85, we said: "A trust must be created by clear and unambiguous language or conduct, it cannot arise from loose statements admitting possible inferences consistent with other relationships." Here the pleadings did not disclose any date, place, or to whom the declarations were made. The consideration or reason for the supposed trust, as averred, was "the appreciation by Frank that the interest he purchased from his father's estate had increased so much in value that he wished his sisters to benefit by that increase." Without taking any steps to assure this result, and closing his estate as he did by a will that gave this property to his wife without reservation, his action would seem to indicate a different intention. Giving full effect to the averments in the petition, if it was in his mind to make a gift to his sisters of a trust estate, he never put his property in any condition to carry out that intention after death. We quoted approvingly from Smith's Estate, 144 Pa. 428, 434, in Ashman's Estate, 223 Pa. 543, 549: "What is clearly intended as a voluntary assignment or a gift, but is imperfect as such, cannot be treated as a declaration of trust. If this were not so, an expression of present gift would in all cases amount to a declaration of trust, and any imperfect gift might be made effectual simply by converting it into a trust." To declare a trust there must be the expression of an intention to create a

trust, not merely to make a present gift. The acts or words relied upon must be unequivocal, plainly implying that the person holds the property as trustee. Whether a gift or trust is intended, if the transaction still remains imperfect and executory, equity will not aid its enforcement. In Dougherty v. Shillingsburg, 175 Pa. 56, 58, it was stated: "It may be conceded that equity will not lend its aid in the creation of a voluntary parol trust, however clear may have been the intention of the donor to create such trust; but if the donor, himself, actually creates or establishes the trust, equity will enforce the execution." The word "trustee" does not create a trust: Lawrence v. Godfrey, 296 Pa. 474. The trust must be complete in all its parts.

Apart from this consideration, it is now too late for appellants to maintain successfully that when Frank died he held his stock in the *Chester Times* as trustee. The question presented in all three proceedings which appellants have instituted has been substantially the same. All proceedings were subsequent to the death of Frank, and the facts upon which any proceeding could be based were known or should have been known by appellants. In the federal court, the basis of the action was that when Frank died he held *all the stock as a trustee*. At that time appellants set up an express parol trust or resulting trust because he purchased from himself as executor. In the present proceeding the same relation is predicated, to wit, that when Frank died he held all the stock as trustee. Trusteeship was the gist of both proceedings.

Appellants' second attempt, in the orphans' court, was founded on the same reason. There the litigation was based on the same theory as the proceeding in the federal court—that Frank took and held this stock as constructive trustee. In the federal courts, the principal parties to the suit were the same as in the instant case. As the questions now raised are the same as those presented there, the decision of that court upon those ques-

tions must be considered res judicata in this action between the same parties.

Broadly stated, the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court. As we said in Hochman v. Mortgage Finance Corp., 289 Pa. 260, 263, "The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule. This is a universal rule......State Hospital v. Con. Water Co., 267 Pa. 29, 37. The requirements for application of the rule are that there be an identity of parties and of subject-matter in the two actions. The first of these requirements being present, all issues that were actually adjudicated in the former action are concluded [Bowers' Est., 240 Pa. 388; First Nat. Bank of Wrightsville v. Dissinger, 266 Pa. 349]; and if the whole cause of action in the second case is the same as in the first, not only the issues actually adjudicated in the first proceeding, but also those which might have been raised and passed upon, are concluded."

Appellants seek in this proceeding, as well as in the prior federal and state actions, to establish the existence of an express or constructive trust in their favor of three-fourths of the shares of stock standing in their

brother's name. The district court considered that matter quite fully; while the proceedings were dismissed on demurrer, the court reviewed all the facts set forth in the bill and held that even if true they presented no cause of action. In so far as these facts were stated it was, therefore, a decision of the case on the merits, for it was a direct holding based on all the relevant facts that could then be asserted, that Frank was not a trustee. It follows that when appellants, without amending or asking for an amendment to their bill in order to assert new facts, took their case to the circuit court of appeals where it was affirmed, their action must be taken to be conclusive that they did not have any additional facts on which to state a better cause of action.

Appellants assert, however, that the prior proceedings are not determinative of the instant case because they now admit that when Frank bought from the estate he took the stock as an absolute owner, and because they now claim that the stock he later bought, as well as that secured from the estate, is subject to a trust created not in 1915 but 1920. These distinctions are immaterial so far as the applicability of the principle of res judicata is concerned, for the differences to which appellants point are matters of proof rather than of issue. The fact that new or different evidence was or may be offered in each of the suits to sustain the particular theory relied on is of no moment (Rauwolf v. Glass, 184 Pa. 237), for the basic issue in all the cases was: Did Frank Wallace hold this stock or any of it in trust for his sisters and himself? Even if this proceeding presents a shade of difference from the former suits, appellants cannot thus split their cause of action and try part of it at one time and part at another; they are not at liberty to prosecute their rights piecemeal by presenting part only of the available grounds and reserving other parts for another suit if the first fails: Grubb v. Public Utlities Commission of Ohio, 281 U. S. 470, 479. Appellants were required to present every available ground of

which they had knowledge in support of the asserted right, and, since all of the evidence now pleaded was in existence at the time of the commencement of the prior proceedings, the necessary averments to cover that evidence vital to the litigation should have been set forth at that time. This case is well illustrative of the need and purpose of the doctrine of res judicata. Without it a party might be vexed continuously by successive actions brought on the theory that the litigant might withhold evidence of his claim and compel the party defendant to defend over and over against its assertion. Public policy, though favoring ease in the assertion of rights, likewise demands an end to litigation.

Decree affirmed at appellants' cost.

Mr. Justice SCHAFFER took no part in the decision of this case.